UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES WARREN SCHREIBER,

        Plaintiff,

v.

      File No.  1:05-CV-91

      HON. ROBERT HOLMES BELL

WILLIAM MOE, Officer, and
CITY OF GRAND RAPIDS,

        Defendants.

                                  /

## O P I N I O N

Plaintiff James Warren Schreiber brought this civil rights action pursuant to 42 U.S.C.

§ 1983 after Defendant, Officer William Moe of the Grand Rapids Police Department, came

to Schreiber's home in response to a 911 call and, after an altercation, arrested him.

Schreiber argues that Officer Moe violated his Fourth Amendment rights by unlawfully

entering his home, arresting him, and using excessive force to effectuate the arrest.  Schreiber

also alleges that Defendant City of Grand Rapids ("the City") violated his constitutional

rights by maintaining a policy that caused the alleged Fourth Amendment violations.  Before

the Court is Defendants' motion for summary judgment on Schreiber's claims.  Because

Schreiber is unable to demonstrate that a constitutional violation occurred, because his false

arrest, illegal imprisonment, and excessive force claims are barred by *Heck v. Humphrey*, 512

U.S. 477 (1994), and because Schreiber has failed to offer any evidence supporting his claim

against the City, the Court grants in part Defendants' motion for summary judgment.
However, because a minor portion of Schreiber's excessive force claim is not barred by *Heck*
and because qualified immunity does not apply to that portion of the claim, the Court denies
in part Defendants' motion for summary judgment.

I.

On November 1, 2002 at approximately 3:39 p.m., the Grand Rapids Police
Department emergency communications center received a 911 call from an anonymous caller
reporting a domestic dispute between Schreiber and his 15-year-old daughter, Sarah. The
following exchange took place between the caller and the 911 dispatch operator:

> Operator: Emergency.
> Caller: Um, there's a possible problem of a neglect case, a neglect case going
> on at 2050 Bayou Court.
> O: What? There's what?
> C: A neglect case in the house.
> O: Have you called Child Protective Services?
> C: It's going on right now.
> O: Okay. At what address?
> C: 2050 Bayou Court.
> . . . .
> O: And how do you know this?
> C: Because the girl called me and told me and then her dad took the phone
> away from her and hung up.
> O: Told you what?
> C: I could hear her screaming and her dad took the phone away from her and
> hung up, and I called her back and she was screaming when somebody
> answered the phone.
> O: So because the mad (sic) at her for talking to you on the phone --
> C: No. No. I don't know why he's mad at her, but she is screaming and
> hollering.
> O: And what is your name?
> C: I would like to remain anonymous.

2

O: Well, you're sending us to talk to somebody, to see about somebody supposedly across on the other side of town, who is supposed to be assaulting their child.

C: But if you guys don't check and something does happen to her, then I did call you guys.

[The operator then attempted to identify the caller based upon the address from which the call originated.  The caller denied that he was the person the operator identified.]

O: You were talking to – what's her name?

C: Sarah.

. . . .

O: Yes.  How old is Sarah?

C: She is 16, I think; 15.

O: And the phone was disconnected?

C: Yes.

O: And this was after her father was yelling at her?

C: Yeah, and her mother, and she was screaming like these [expletive] -- I don't know, as if her life dependent (sic) on it.  She was screaming that loud on the phone.

O: And then you called back and what happened?

C: She was screaming and then her dad hung up the phone on me.  I could hear her screaming in the background.  I just want to make sure nothing is going to happen to her.  That's all I want to make sure.  If something does happen and you guys don't go out there, then you know, I did call.

. . . .

O: All right.  We will see what's going on.

Exhibit B, Nov. 1, 2002 Dispatch Transcript at 1-4.  The dispatch operator labeled the incident a "Priority 2."  The Grand Rapids Police Department Manual of Procedures provides that a Priority 2 call involves the potential for physical harm against a person present at the scene.  At approximately 3:46 p.m., Officer Moe was dispatched to the Schreiber's home to check on the situation.  While enroute he received a message from the dispatch operator

explaining that it was a Priority 2 call involving the welfare of a 15-year-old girl and that an anonymous caller "thinks she is getting beat." Exhibit D.

Schreiber does not dispute that, prior to Officer Moe's arrival, he and his daughter were involved in a "heated" discussion. Schreiber Dep. at 17. The argument was the culmination of Sarah's recent rebellious behavior. Schreiber acknowledges that during the argument, he took the phone away from Sarah and "threw it on the floor because she wouldn't hang up." Schreiber Dep. at 21. It is not clear from the record, but at some point prior to Officer Moe's arrival, Sarah telephoned a social worker at Catholic Social Services, Cindy Musto. Musto explained that she spoke with Schreiber in an effort to calm him down, however, during their conversation, he continued to yell and threaten his daughter. Musto Dep. at 8-9, 12. Schreiber left the phone after hearing a knock at the door. Musto Dep. at 8.[1]

The knock on the Schreiber's door was Officer Moe. Officer Moe arrived at Schreiber's residence shortly after being dispatched to the location. Upon his arrival, Officer Moe heard screaming coming from the residence: "I could hear a male voice inside screaming profanities at an unknown person." December 11, 2002 Preliminary Examination Transcript at 7-8 ("Prelim. Tr.").[2] When Officer Moe knocked on the apartment door, a

---

[1]Although Schreiber left the phone conversation with Musto, he did not end the phone call. Musto remained on the open phone line and could hear background noise emanating from the Schreiber's home. Musto Dep. at 8.

[2]It appears that a deposition of Officer Moe has not been included in the record of this case. Officer Moe did testify, however, during a state court proceeding involving this matter. Defendants have included Officer Moe's testimony during the state court proceeding in the record.

young boy, James Schreiber Jr., opened the door.  When the door opened, Officer Moe could see Schreiber screaming at someone but could not see the target of his invective.  Prelim Tr. at 9.  Officer Moe was also not able to see Sarah.  According to Officer Moe, he asked Schreiber's son if Sarah was okay, however, before the boy could answer, Schreiber came to the door, yelling profanities, and demanding to know why Officer Moe was there.  Prelim. Tr. at 9, 11.  Schreiber then profanely told Officer Moe that he was not permitted in the apartment.  Schreiber Dep. at 25.  Officer Moe informed him that he was going to check on Sarah's welfare.  Schreiber Dep. at 24.  Despite Schreiber's repeated, belligerent objection to the entry, Officer Moe entered the apartment because he "was deeply concerned that his (Schreiber's) daughter was not okay and she may be injured and he may have assaulted her." Prelim. Tr. at 13.  Officer Moe conceded that Schreiber did not invite him into the home. Prelim. Tr. at 13.

After entering the residence, Officer Moe located Sarah in the living room and observed that she was crying and upset.  Prelim. Tr. at 14, Schreiber Dep. at 29-30.  Despite Officer Moe's arrival, both Schreiber and his daughter continued to argue and curse at each other.  Prelim Tr. at 14-15.  Officer Moe described the situation as "chaos" and "basically a barrage of profanities" and threats between Schreiber and his daughter.  Prelim. Tr. at 17-18. Schreiber also continued to yell at Officer Moe, calling him a "Neo Nazi" and "pig." Schreiber Dep. at 31.  He also continued to demand that Officer Moe leave his home or

obtain a search warrant.  Schreiber Dep. at 31.  In light of the situation, Officer Moe requested immediate back up from an additional officer.  Prelim. Tr. at 17.

At some point during the early stages of the situation, Officer Moe talked to Musto on the telephone.  Prelim. Tr. at 18, Schreiber Dep. at 30-31, Musto Dep. at 12-13.  Officer Moe claims that Schreiber's wife handed him the phone and indicated that Musto would explain the situation.  Prelim. Tr. at 18.  Schreiber does not dispute that Officer Moe spoke with Musto on the telephone.  Musto identified herself and explained that she was concerned for Sarah's safety.  Musto Dep. at 13-14, Prelim. Tr. at 18.  After suggesting that Sarah be taken to a teen shelter, Musto ended the phone call with Officer Moe.  Musto Dep. at 13.  Upon the arrival of Officer Matthew Veldman on the scene, Officer Moe attempted to run a file check on Schreiber and asked Schreiber's wife if she had a personal protection order against him.  During this time, Schreiber continued to yell at Officer Moe and demand that he leave.  Schreiber Dep. at 31-32, 34, Prelim. Tr. at 21-22.  Schreiber also asked if he could leave the living room to use the bathroom.  Schreiber Dep. at 34.  Officer Moe refused to allow Schreiber to leave the living room.  Prelim. Tr. at 22, Schreiber Dep. at 34.  According to Schreiber, Officer Moe said that he would not allow Schreiber to leave because he might have a gun in another room.  Schreiber Dep. at 34.  Schreiber also asserts that Officer Moe pushed him back onto the couch when he attempted to stand up and leave.

Although Officer Moe would not allow Schreiber to go to another room in the apartment, Schreiber did go outside on a second-story balcony to relieve himself.  Schreiber

6

Dep. at 34-35.  When Schreiber exited the apartment onto the balcony, Officer Moe closed the sliding glass door behind him.  Prelim. Tr. at 25.  Schreiber maintains that Officer Moe locked the door and was laughing at him from inside the apartment.  Schreiber Dep. at 34-35. Schreiber, however, concedes that he did not see Officer Moe lock the door.  Schreiber Dep. at 37.  Nevertheless, Schreiber became incensed, used more profanity, and demanded that Officer Moe open the door.  Schreiber Dep. at 36.  When Officer Moe did not open the door, Schreiber ripped off the screen door, grabbed a lawn chair and struck the glass door three times, causing the door to completely shatter into the apartment.  Schreiber Dep. at 36.

The parties tell slightly different versions of the ensuing events.  Schreiber acknowledges that he was "out of control" when he broke the sliding glass door, however, he contends that he walked into the apartment and was immediately grabbed by Officer Moe and thrown to the glass-covered floor.  Schreiber Dep. at 42-43.  Schreiber could not recall if he said anything as he walked through the door.  Schreiber Dep. at 44.  Schreiber also denies that he tried to strike Officer Moe during the incident.  Schreiber Dep. at 47.  He also claims that when he landed face down on the floor, Officer Moe was on top of him, rubbed his face in the glass and punched him in the face and side, at least twenty times.  Schreiber Dep. at 46-47.  Although Schreiber denies that he attempted to strike Officer Moe, he concedes that while the two men were on the ground he continued to use profanity and insult Officer Moe.  Schreiber Dep. at 48.

Officer Moe asserts that when Schreiber broke through the door he immediately charged at Officer Moe. Prelim. Tr. at 26. Officer Moe maintains that Schreiber struck him at least seven or eight times and that, during the struggle, he brought Schreiber to the ground amidst the glass. Prelim. Tr. at 26-27. Although Officer Moe denies that he pushed Schreiber's face into the glass, he does concede that he hit Schreiber at least six times. Prelim. Tr. at 27. He maintains that these punches were necessary to defend himself from Schreiber's attack. Prelim. Tr. at 27. While the two men were struggling on the ground, Officer Veldman prevented two of Schreiber's children from jumping on Officer Moe's back. Prelim. Tr. at 28. Officer Moe also claims that he struggled with Schreiber on the ground for about two minutes before he was able to control him and apply handcuffs. Prelim. Tr. at 28.

After Schreiber was handcuffed, Officer Moe escorted him to his police car. While en route, Schreiber cursed at Officer Moe and spit blood in his direction. Schreiber claims that when Officer Moe placed him in the police car, he kicked Schreiber five times in the ribs. Schreiber Dep. at 50. Officer Moe denies this accusation. While in the police car, Schreiber continued to scream and spit blood. He also told Officer Moe that he had AIDS. Schreiber Dep. at 52. Schreiber did not have AIDS, but, by his own admission, lied to Officer Moe to "piss him off." Schreiber Dep. at 53.

Schreiber was taken to a local hospital where he was treated for three facial lacerations as well as bruises and swelling around each eye. Although he complained of rib pain, medical personnel did not discover a fracture. According to Officer Moe, while he was

transporting Schreiber to the hospital, Schreiber threatened to kill him, have someone else injure him, or sue him.  On December 16, 2003, Schreiber plead no contest in state court to a misdemeanor offense of attempting to assault, wound, resist, obstruct, oppose, or endanger a police officer in violation of MICH. COMP. LAWS §§ 750.81d(1), 750.92.  Thereafter, Schreiber filed the present lawsuit seeking damages for alleged constitutional violations.

## II.

Summary judgment is appropriate when the record reveals that there are no issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kalamazoo Acquisitions, L.L.C. v. Westfield Ins. Co.*, 395 F.3d 338, 342 (6th Cir. 2005); *Layne v. Bank One, Ky, N.A.*, 395 F.3d 271, 275 (6th Cir. 2005).  The standard for determining whether summary judgment is appropriate is whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Tucker v. Union of Needletrades, Industrial and Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).  The Court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in the favor of the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Minadeo v. ICI Paints*, 398 F.3d 751, 756 (6th Cir. 2005).

Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the non-moving party has the burden of coming forward with

9

evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Although the facts are viewed in the light most favorable to the non-movant, they may not

rest on the mere allegations of his pleadings. FED. R. CIV. P. 56(e); *Daniel v. Cantrell*, 375

F.3d 377, 381 (6th Cir. 2004). "A mere scintilla of evidence is insufficient." *Humenny v.

Genex Corp.*, 390 F.3d 901, 904 (6th Cir. 2004). Rather, a party with the burden of proof

opposing a motion for summary judgment has the burden to come forth with requisite proof

to support his legal claim, particularly where he has had an opportunity to conduct discovery.

*See Cardamone v. Cohen*, 241 F.3d 520, 524 (6th Cir. 2001).

## III.

Section 1983 imposes civil liability on any person who, acting under color of state

law, deprives another person of the "rights, privileges, or immunities secured by the

Constitution and laws." 42 U.S.C. § 1983, *Myers v. Potter*, 422 F.3d 347, 352 (6th Cir.

2005). Schreiber contends Officer Moe, while acting under color of state law, violated the

Fourth Amendment by entering his home without a warrant, falsely arresting him, and using

excessive force to effectuate that arrest. Officer Moe does not dispute that he was acting

under color of state law in his capacity as a city police officer during the incident underlying

this litigation. Officer Moe, however, denies that his conduct violated the Fourth

Amendment.

A.     The Warrantless Entry

The Fourth Amendment provides that: "The right of the people to be secure in their

persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be

violated, and no Warrants shall issue, but upon probable cause, supported by Oath or

affirmation, and particularly describing the place to be searched, and the persons or things

to be seized." U.S. CONST. amend. IV. "It is axiomatic that the 'physical entry of the home

is the chief evil against which the wording of the Fourth Amendment is directed.'" *Welsh v.*

*Wisconsin*, 466 U.S. 740, 748 (1984) (quoting *United States v. United States Dist. Court*, 407

U.S. 297, 313 (1972)); *Payton v. New York*, 445 U.S. 573, 585 (1980). The Fourth

Amendment requires that searches of the home be reasonable. *United States v. Williams*, 354

F.3d 497, 503 (6th Cir. 2003) (citing *Illinois v. Rodriguez*, 497 U.S. 177, 185-86 (1990)).

Generally, this reasonableness requirement mandates that police obtain a warrant based upon

a judicial determination of probable cause prior to entering a home. *Payton*, 445 U.S. at 585-

86. Therefore, police entry into a home without a warrant is presumptively unreasonable.

*Brigham City v. Stuart*, 126 S. Ct. 1943, 1947 (2006) (quoting *Groh v. Ramirez*, 540 U.S.

551, 559 (2004)); *Rodriguez*, 497 U.S. at 185-86; *O'Brien v. City of Grand Rapids*, 23 F.3d

990, 996 (6th Cir. 1994). A warrant is required whether the police enter a residence to

conduct a search or seizure or for some other purpose. *United States v. Rohrig*, 98 F.3d

1506, 1511 (6th Cir. 1996). Nevertheless, because the touchstone of the Fourth Amendment

is reasonableness, the Supreme Court has crafted "a few specifically established and well-

11

delineated exceptions" to the warrant requirement.  *Mincey v. Arizona*, 437 U.S. 385, 390

(1978); *Flippo v. West Virginia*, 528 U.S. 11, 13 (1999); *United States v. Haddix*, 239 F.3d

766, 767 n. 2 (6th Cir. 2001).

  In this case, it is undisputed that Officer Moe entered Schreiber's residence without

a warrant in response to a 911 call regarding an incident involving Schreiber's daughter.

Thus, absent the application of one of the warrant requirement exceptions, the Fourth

Amendment will have been violated.  Defendants contend that Officer Moe's entry into

Schreiber's home was justified by the "exigent circumstances" exception to the warrant

requirement.  Exigent circumstances exist where "real immediate and serious consequences"

would "certainly occur" if a police officer postponed action to obtain a warrant.  *Ewolski v.

City of Brunswick*, 287 F.3d 492, 501 (6th Cir. 2002) (quoting *O'Brien*, 23 F.3d at 997)

(quoting *Welsh*, 466 U.S. at 751).  The Sixth Circuit has identified the following emergency

situations that give rise to exigent circumstances justifying the failure to procure a warrant:

(1) hot pursuit of a fleeing felon, (2) imminent destruction of evidence, (3) the need to

prevent a suspect's escape, or (4) a risk of danger to the police or others.  *Id*.; *Williams*, 354

F.3d at 503 (quoting *United States v. Johnson*, 22 F.3d 674, 680 (6th Cir. 1994)).  Defendants

assert that Officer Moe's entry into Schreiber's home implicates the fourth situation.

Specifically, Officer Moe argues that the 911 call coupled with his observations at the scene

and while standing at the front door provided a sufficient basis to enter the home without

obtaining a warrant in order to ensure the safety of Schreiber's daughter.  *See Mincey*, 437

U.S. at 392 ("[T]he Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid.") ; *see also Georgia v. Randolph*, 126 S. Ct. 1515, 1526 (2006) (discussing the "undoubted right of the police to enter [a home] in order to protect a victim.").

As a threshold matter, the parties do not agree on the standard applicable to the exigent circumstances inquiry.  Schreiber contends that Defendants must demonstrate both probable cause and exigent circumstances to justify the warrantless entry of a home.  *United States v. McClain*, 444 F.3d 556, 562 (6th Cir. 2005) (discussing government's burden of proving both probable cause and exigency); *United States v. Reed*, 141 F.3d 644, 649 (6th Cir. 1998) (holding that police may "enter a residence without a warrant if there is probable cause to believe that there is a burglary in progress.").  Defendants assert that it is not necessary to demonstrate probable cause.  They contend that it is sufficient to show only that Officer Moe reasonably believed that exigent circumstances existed.  *See Mincey*, 437 U.S. at 392 (holding that police officers may enter home without a warrant "when they reasonably believe that a person within is in need of immediate aid."); *Ewolski*, 287 F.3d at 501 ("The relevant inquiry is whether the facts are such that an objectively reasonable officer confronted with the same circumstances could reasonably believe that exigent circumstances existed.").

Given that probable cause is defined as "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion," *United States v. Bennett*, 905 F.2d

13

931, 934 (6th Cir. 1990), the parties' dispute appears to be nothing more than a matter of semantic degree.  Nevertheless, whether the Court applies some lesser burden of proof or requires a showing of probable cause, the outcome of the case is the same.  Based upon the undisputed facts in the record taken in the light most favorable to Schreiber, it is clear that Officer Moe's warrantless entry was justified based upon the exigent circumstances presented.  Officer Moe was dispatched to Schreiber's home after a 911 call reporting a heated argument between Schreiber and his daughter.  The dispatcher labeled the call a "Priority 2," thus indicating that it required an immediate law enforcement response and involved potential physical harm to a person on the scene.  Prior to arriving on the scene, Officer Moe was also informed that he needed to check on the daughter's welfare because the 911 caller thought she was "getting beat."  When Officer Moe arrived at the scene the Schreibers' dispute was still on-going and could be heard from outside the home.  After Schreiber's son answered the front door, Officer Moe could see and hear Schreiber shouting, but could not see the person he was arguing with.  Finally, when Officer Moe explained that he needed to check on Sarah's welfare, he was met with anger, profanity, and a denial of entry from Schreiber.

The 911 call surely justified an initial investigation of the incident.  *Thacker v. City of Columbus*, 328 F.3d 244, 254 n. 2 (6th Cir. 2003) (noting that 911 call reporting an emergency, "justified a police response to investigate the situation further, but did not necessarily justify entry into a private home.") (citing *United States v. Meixner*, 2000 WL

14

1597736 at *8 (E.D. Mich. Oct. 26, 2000) (holding that 911 hang-up coded as a possible domestic violence incident justified a limited response)); *cf. United States v. Richardson*, 208 F.3d 626, 629 (7th Cir. 2000) ("911 calls reporting an emergency can be enough to support warrantless searches under the exigent circumstances exception, particularly where . . . the caller indentifie[s] himself."); *United States v. Cunningham*, 133 F.3d 1070, 1072-73 (8th Cir. 1998) (holding that 911 call from woman who identified herself and claimed that she was being held against her will justified protective sweep of residence). Officer Moe's on-scene observations outside the home, the need to protect a minor child, and Schreiber's behavior provided further support that an exigency existed justifying an immediate, warrantless entry into the home. In *Thacker*, the Sixth Circuit held that police officers had not violated plaintiffs' Fourth Amendment rights when they entered plaintiffs' home in response to a 911 call. 328 F.3d at 255. Police were called to the home after one of the plaintiffs' called 911 to report that her boyfriend was cut and bleeding. *Id.* at 249. The caller did not reveal how the injury occurred. *Id.* When police arrived and made contact with plaintiffs at the front door, they immediately observed broken glass on the kitchen floor, an indentation in the wall, and a liquid stain beneath it. *Id.* They also observed that plaintiff was bleeding, intoxicated and belligerent toward the officers. *Id.* Based upon the circumstances, the police entered the home to investigate a possible crime, assist plaintiff, and determine if the area was secure for paramedics. *Id.*

The court in *Thacker* held that the totality of the circumstances justified entry without a warrant based upon exigent circumstances. *Id*. at 254-55.  In particular, the court pointed to the 911 call, the nature of the emergency, plaintiff's behavior, and the uncertainty of the situation. *Id*.  Similarly, in this case, the 911 call indicating a threat to a minor child, the fact that the dispute was on-going upon Officer Moe's arrival, Officer Moe's inability to see Schreiber's daughter while at the front door, and Schreiber's conduct justified entry into the home to diffuse the situation and to ensure that Schreiber's daughter was unharmed.  *See also United States v. Brooks*, 367 F.3d 1128, 1135 (9th Cir. 2004) (holding that exigent circumstances justified police officers' warrantless entry into hotel room where police received 911 call regarding domestic dispute and upon arrival could not see the alleged victim but could see that the hotel room was in disarray); *United States v. Jenkins*, 329 F.3d 579, 581-82 (7th Cir. 2003) (holding that warrantless entry of home was justified by exigent circumstances where police received 911 call reporting an assault and police observed suspicious circumstances upon arriving at the scene).

Schreiber argues that *Thacker* is inapplicable because, in this case, Officer Moe was not investigating a crime and was summoned based upon an anonymous call.  Schreiber's attempt to distinguish *Thacker* is unavailing.  First, the police engage in numerous actions that are not related to criminal investigation.  *See Cady v. Dombrowski*, 413 U.S. 433, 441 (1973) ("Local police officers . . . engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or

acquisition of evidence relating to the violation of a criminal statute."); *United States v. Quezada*, 448 F.3d 1005, 1007 (8th Cir. 2006) ("Police officers . . . tend to be 'jacks of all trades,' who often act in ways totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of criminal law."); *United States v. Garner*, 416 F.3d 1208, 1212 (10th Cir. 2005) ("'Encounters are initiated by the police for a wide variety of purposes, some of which are wholly unrelated to the desire to prosecute for crime.'") (quoting *United States v. King*, 990 F.2d 1552, 1560 (10th Cir. 1993) (quoting *Terry v. Ohio*, 392 U.S. 1, 13 (1968))).   In this case, the police had a duty to respond to an emergency call and to investigate and protect the welfare of a minor child. *See Thacker*, 328 F.3d at 253 ("Police have a right and a duty to respond to emergency situations.").   Although there was no report of a crime, there was a report of a heated argument and a serious threat to a child's safety.   The duty to investigate a threat to a minor and, if necessary, to protect that child, on the part of the police is unquestionable and certainly justified Officer Moe's response, even absent the report of a crime.   *Mincey*, 437 U.S. at 392 ("[T]he Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid.").

Second, while the Court recognizes that this case differs from *Thacker* in that, here, the 911 call was anonymous, this isolated fact does not require a different result.   Although the emergency call instigating police response to Schreiber's home was anonymous, the additional facts observed by Officer Moe upon his arrival served to both corroborate the

information provided by the caller and justify further investigation, including immediate entry into the home. In brief summary, upon arriving outside the home Officer Moe could hear a loud, profanity-laced argument. Upon proceeding to the front door, Officer Moe could hear and see Schreiber shouting at an unknown occupant in the home. Finally, Schreiber's immediate response to Officer Moe was anger, profanity, and obstinance. Officer Moe's initial observations corroborated the caller's report of a heated argument between a father and daughter. The fact that the argument continued unabated coupled with Officer Moe's inability to see the target of Schreiber's shouting and Schreiber's behavior toward him offered further support for the anonymous caller's report and justified Officer Moe's immediate response. Based upon the corroborating information gathered by Officer Moe, there is nothing objectionable about the police officer's reliance on an anonymous emergency phone call in this case. *See United States v. Holloway*, 290 F.3d 1331 (11th Cir. 2002) (upholding warrantless search of home based upon exigent circumstances where police received an anonymous 911 call reporting gunfire and arguing at defendant's home). In *Holloway*, the court indicated that after receiving the anonymous 911 call, police at the scene did not observe anything that "dissuaded the officers from believing the veracity of the 911 calls." 290 F.3d at 1338. Further, the police observed defendant and his wife on the front porch. The court held that based upon the 911 call and the police officer's observations there was probable cause to believe that a person located in the residence may be in danger, and thus, a warrantless search of the home was justified. *Id*. This case is arguably stronger than

*Holloway* in that while Officer Moe did not find anything to dissuade him from believing the veracity of the anonymous caller, he also found circumstances that affirmatively corroborated the caller's report and indicated that the dispute and potential threat was still on-going.

Finally, a brief comparison of this case to a case in which a warrantless entry was not justified provides further support for holding that Officer Moe's entry did not violate the Fourth Amendment. In *Kerman v. City of New York*, 261 F.3d 229 (2d Cir. 2001), the Second Circuit held that plaintiff's Fourth Amendment rights were violated by defendant police officers warrantless entry into his apartment. The court rejected defendant's reliance on exigent circumstances based on an anonymous 911 call reporting that a "mentally ill man" was "off his medication and acting crazy and possibly had a gun." *Kerman*, 261 F.3d at 232. The court noted two salient facts: (1) the anonymous 911 call was the sole basis for the officer's conclusion that exigent circumstances justified a warrantless entry, and (2) before entering the home, the officers did not conduct any investigation to confirm the call. *Id*. at 235. Accordingly, the court held that because the officers failed to corroborate the 911 call, their actions violated the Fourth Amendment. *Id*. at 236. Unlike *Kerman*, in this case the 911 call was not the sole basis for concluding that exigent circumstances existed. Nor did the responding officer fail to conduct an investigation to confirm the call. Through his observations at the scene, Officer Moe corroborated the information received from the 911 caller and, while standing at the open front door made additional observations that supported a warrantless entry based upon exigent circumstances.

19

Schreiber also argues that Officer Moe's refusal to leave despite his demand to do so violated the Fourth Amendment.  This argument is at best silly and at worst potentially dangerous.  Schreiber's continuous objection to Officer Moe's entry and presence in the home does not place this case outside permissible police activity.  Although Officer Moe was on the scene, Schreiber and his daughter continued to argue.  Even with Officer Moe in the home, the argument was chaotic and simply a "barrage of profanities" between the two family members.  Schreiber also turned his hostility toward Officer Moe, engaging in name-calling and cursing.  Moreover, shortly after entering the home, Officer Moe received information from Musto that she believed Schreiber's daughter was in danger and needed to be removed from the house.  The idea that in the midst of this on-going, uncertain and volatile situation the police would be required to remove themselves at the behest of an argumentative and abusive person is silly.  As the Supreme Court recently explained:

> [S]o long as [the police] have good reason to believe such a threat exists, it would be silly to suggest that the police would commit a tort by entering, say, to give a complaining tenant the opportunity to collect belongings and get out safely, or *to determine whether violence (or threat of violence) has just occurred or is about to (or soon will) occur,* however much a spouse or other co-tenant objected. . . . Thus, the question whether the police might lawfully enter over objection in order to provide any protection that might be reasonable is easily answered yes.

*Randolph*, 126 S. Ct. at 1525 (emphasis added).  Officer Moe did not violate the Fourth Amendment by remaining in the home while the situation remained in flux and the minor child's welfare was still in question.  A police officer's role is not limited to either criminal investigation or rendering assistance after the fact, rather, "[t]he role of a peace officer

20

includes preventing violence and restoring order, not simply rendering first aid to casualties; an officer is not like a boxing (or hockey) referee, poised to stop a bout only if it becomes too one-sided." *Brigham City*, 126 S. Ct. at 1949.[3]  Accordingly, based upon the totality of the circumstances, it is clear from the undisputed evidence in the record that Officer Moe's entry into Schreiber's home (as well as his continued presence therein) was justified by the exigent circumstances exception to the Fourth Amendment's warrant requirement.  Therefore, no constitutional violation was committed and summary judgment in Defendants' favor is appropriate.

B.      Excessive Force, False Arrest, Illegal Imprisonment

        Schreiber has also alleged constitutional violations against Officer Moe for excessive force, false arrest, and illegal imprisonment.  The Sixth Circuit has held that these claims are best evaluated as violations of the Fourth Amendment.  *See Crockett v. Cumberland Coll.*, 316 F.3d 571, 579-80 (6th Cir. 2003) (holding that false arrest and false imprisonment claims implicate the "Fourth Amendment right to be arrested only upon probable cause.");  *Lyons v. City of Xenia*, 417 F.3d 565, 572 (6th Cir. 2005) (holding that excessive force claims are

---

[3]Schreiber's contention that Officer Moe "had no authority" to refuse to let him go to the bathroom is similarly misguided.  At the time of Schreiber's request, Officer Moe was in the midst of a potentially volatile domestic situation.  Since his arrival on the scene, Schreiber had done nothing but verbally abuse Officer Moe and profanely inform him of his dislike for police officers.  While Schreiber appears to object to Officer Moe's stated concern that he may retrieve a weapon from another room, this concern was not unfounded and, given the uncertainty of the situation, was quite reasonable.  In order to ensure his own safety and maintain control of the situation, Officer Moe's refusal to allow Schreiber to leave the living room was reasonable.

properly analyzed under the Fourth Amendment's "objective reasonableness" standard) (quoting *Graham v. Connor*, 490 U.S. 386, 388 (1989)). Defendants contend that summary judgment in their favor is required because Schreiber's claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).

In *Heck*, the Supreme Court held that § 1983 plaintiffs are barred from advancing claims that, if successful, "would necessarily imply the invalidity" of a prior conviction or sentence. 512 U.S. at 487. If, however, "the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." *Id*. (emphasis in original). Defendants argue that Schreiber's success on the excessive force, false arrest, or illegal imprisonment claims would necessarily imply the invalidity of his state court misdemeanor conviction. Schreiber plead no contest in state court to a misdemeanor charge of attempted assaulting/resisting/obstructing a police officer in violation of MICH. COMP. LAWS §§ 750.81d(1), 750.92. Ex. A, Def.'s Br. Summ. J.

Defendants argue that Schreiber's conviction bars his false arrest and imprisonment claims because such claims are contingent on a finding of a lack of probable cause, and therefore, success on his federal claims would imply the invalidity of his misdemeanor conviction. In his response, Schreiber failed to address the application of *Heck* to his false arrest and illegal imprisonment claims, confining his discussion solely to the excessive force claim. In general, undeveloped arguments are waived. *See, e.g., United States v. Lanzotti*,

22

205 F.3d 951, 957 (7th Cir. 2000) ("It is not this court's responsibility to research and construct the parties' arguments."). Nevertheless, Defendants' argument appears well taken. In order to prevail on his federal false arrest and imprisonment claims, Schreiber must show that he was arrested without probable cause. *Crockett*, 316 F.3d at 580; *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995) (holding that § 1983 claim for wrongful arrest hinges on whether officer had probable cause under the Fourth Amendment). Both Schreiber's misdemeanor conviction and his subsequent federal claims stemmed from his altercation with Officer Moe and his subsequent arrest. Thus a finding in this case that Officer Moe lacked probable cause to arrest Schreiber would necessarily imply the invalidity of the misdemeanor conviction that also stemmed from that arrest because it would undermine the basis for the misdemeanor charge. Accordingly, Schreiber's false arrest and illegal imprisonment claims are barred by *Heck*.[4]   *See e.g.*, *Ramirez v. Dennis*, 2002 U.S. Dist. LEXIS 10436, *11-12

---

[4]Even if the Court considered the merits of Schreiber's false arrest and illegal imprisonment claims, summary judgment in Defendants' favor would be appropriate. For a police officer to have probable cause for arrest, there must be "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing or is about to commit an offense." *Crockett*, 316 F.3d at 580 (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)). At the time of Schreiber's arrest, he had been repeatedly verbally abusive toward Officer Moe, had continued to verbally abuse his daughter, defied Officer Moe's order to remain in the living room, and had thrown a chair through a sliding glass door in order to re-enter his apartment. The crime to which Schreiber eventually plead no contest was an attempt to assault, batter, wound, resist, obstruct, oppose, or endanger a police officer. MICH. COMP. LAWS § 750.81d(1). The undisputed facts, taken together, clearly provided Officer Moe with probable cause to arrest Schreiber for this crime. Accordingly, Schreiber's false arrest claim fails on its merits as well. *See Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998) (noting that "probable cause constitutes an absolute bar

23

(W.D. Mich. June 6, 2002) (Quist, J.) (holding that *Heck* barred plaintiff's false arrest and imprisonment claim where plaintiff previously plead no contest to a domestic assault charge arising from the same confrontation with police).

Schreiber's excessive force claim is also barred, in part, by the *Heck* doctrine.  In *Cummings v. City of Akron*, 418 F.3d 676 (6th Cir. 2005), plaintiff brought a § 1983 cause of action claiming, among other allegations, that defendants, police officers, violated his Fourth Amendment right to be free from excessive force.  The case arose from an incident in which defendants visited plaintiff's home while investigating a domestic disturbance at a neighboring residence.  *Cummings*, 418 F.3d at 687.  After defendants attempted to question plaintiff, a struggle ensued.  *Id*. at 680.  Ultimately, plaintiff was arrested.  Plaintiff plead no contest to a state misdemeanor charge of assaulting one of the officers and filed a § 1983 action in federal court alleging constitutional violations stemming from the incident.  *Id*.  The Sixth Circuit held that plaintiff's excessive force claim was barred by *Heck* because if plaintiff prevailed it would necessarily imply the invalidity of his state conviction.  *Id*. at 681.  The court explained, "[t]he struggle between [plaintiff] and the officers gave rise to both [plaintiffs'] assault conviction and the excessive force claim, and the two are inextricably intertwined."  *Id*. at 682-83.  Thus, plaintiff's excessive force claim was barred by *Heck*.  *Id*.

*Cummings* applies with equal force to the present case before the Court.  Like *Cummings*, Schreiber plead no contest to a state misdemeanor charge stemming from an

_____

to both state and § 1983 claims alleging false arrest.").

24

altercation with law enforcement. Further, like *Cummings*, the altercation between Schreiber and Officer Moe gave rise to both the conviction and the excessive force claim, and thus, "the two are inextricably intertwined." *Id*. As such, the portion of Schreiber's excessive force claim related to the struggle between he and Officer Moe and his eventual arrest is clearly barred by *Heck*. *Id*.

Schreiber briefly attempts to distinguish *Cummings* from the present case. This attempt is unavailing. First, Schreiber contends that a "close reading" of *Cummings* "gives rise to a ver[y] strong inference" that *Heck* must be plead as an affirmative defense. Pl.'s Res. Br. at 7. It is somewhat telling that Schreiber failed to provide a specific citation to the portion of *Cummings* which gives rise to this purported "very strong inference." In a footnote, the court did mention that defendants had not raised *Heck* in their motion for summary judgment. *Cummings*, 418 F.3d at 681 n.3. After noting that at least one circuit court previously held that failure to assert *Heck* in the district court may result in waiver of the argument on appeal, the court explicitly stated, "[i]n any event, Plaintiff has not argued on appeal that *Heck* constitutes an affirmative defense; thus it is unnecessary for this Court to make any such finding." *Id*. This statement seriously undermines Schreiber's contention that *Cummings* supports a strong inference that *Heck* must be plead as an affirmative defense. *See also Manthey v. Kessler*, 79 F. App'x 153, 153-54 (6th Cir. 2003) (affirming without discussion district court's *sua sponte* finding that *Heck* barred plaintiff's claims). The Sixth

Circuit has not required that *Heck* be specifically plead as an affirmative defense and the Court will not impose such a requirement.

Second, in attempting to factually distinguish *Cummings* from the present case, Schreiber mischaracterizes the charge to which he plead. Schreiber contends that he plead no contest to attempted hindering and opposing a police officer. Apparently, this charge is a violation of a city ordinance. The record clearly indicates, however, that Schreiber plead no contest to a charge of attempted assaulting/resisting/obstructing a police officer, a violation of *state* law. Exhibit A, Def.'s Br. Summ. J. To the extent that Schreiber is arguing that there is a material difference between the charge in *Cummings* and the charge in the present case, the argument is rejected. It is not material that in *Cummings*, plaintiff was able to complete his assault on a police officer, while in this case, Schreiber was prevented from doing so prior to the execution of the target offense. In both cases, the plaintiff's misdemeanor conviction was inextricably intertwined with the excessive force claim such that success on the constitutional claim would imply the invalidity of the state court conviction. Accordingly, Schreiber's excessive force claim is barred, in part, by *Heck*.

Schreiber's excessive force claim is only barred in part because the claim also encompasses Schreiber's allegation that Officer Moe kicked him five times while he was handcuffed and in custody in a police car. At this stage of the proceeding, the Court must accept this allegation as true. This portion of the excessive force claim is not, however, barred by *Heck* because it is not inextricably intertwined with the parties' initial altercation

26

and Schreiber's state court misdemeanor conviction. The alleged excessive force took place well after Officer Moe subdued Schreiber and placed him in handcuffs. The alleged excessive force is separate and distinct from the altercation that gave rise to Schreiber's conviction and the principal aspects of the excessive force claim. A finding that Officer Moe used excessive force while Schreiber was in custody does not necessarily imply that the state court conviction arising from Schreiber's detainment was invalid. *See e.g., Sanford v. Motts*, 258 F.3d 1117, 1120 (9th Cir. 2001) ("Excessive force used after an arrest is made does not destroy the lawfulness of the arrest."). Accordingly, this minor portion of Schreiber's excessive force claim is not barred by *Heck*.

D. Qualified Immunity

Defendants have also alleged that Officer Moe is entitled to qualified immunity. "Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 125 S. Ct. 596, 599 (2004). Government officials sued in their individual capacities may assert qualified immunity. *Guest v. Leis*, 255 F.3d 325, 337 (6th Cir. 2001). The qualified immunity analysis requires a two-part inquiry evaluating two closely linked questions. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). First, in the light most favorable to the plaintiff, "do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier*, 533 U.S. at 201. Second, if a constitutional right was violated, "the next, sequential step is to ask whether the right was clearly established." It is

not enough to allege a broad, general violation of a right. Rather, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates the right." *Id.*, at 202 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Thus "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* Schreiber bears the burden of demonstrating that Officer Moe's conduct violated a clearly established right and that Officer Moe is not entitled to qualified immunity. *Barrett v. Steubenville City Sch.*, 388 F.3d 967, 970 (6th Cir. 2004); *Spurlock v. Satterfield*, 167 F.3d 995 (6th Cir. 1999).

    1.    Warrantless Entry

As set forth above, the Court has concluded that Officer Moe's entry did not violate the Fourth Amendment. But, even assuming that a violation occurred, Officer Moe would be entitled to qualified immunity because he did not violate any clearly established rights of which a reasonable officer would have known. "Although it need not be the case that the very action in question has been previously held unlawful, . . . in light of pre-existing law, the unlawfulness must be apparent." *Hinchman v. Moore*, 312 F.3d 198, 205 (6th Cir. 2002) (citing *Ewolski*, 287 F.3d at 501 (internal quotation marks omitted)). In this case, it was not apparent that entering Schreiber's home in order to ensure the safety of a minor child and resolve a boisterous argument was unlawful. Officer Moe was presented with a situation in which he had information that a fifteen-year-old girl was being threatened by her father.

28

Upon arriving at the scene he could hear that the dispute was loud and on-going, and while at the front door he could see Schreiber shouting at someone within the house but could not see Schreiber's daughter.  At best, reasonable officials could disagree over whether entry without a warrant violated the Fourth Amendment.  *Thacker*, 328 F.3d at 260 ("Immunity applies if reasonable officials could disagree as to whether the conduct violated the plaintiff's rights.") (quoting *Thomas v. Cohen*, 304 F.3d 563, 580 (6th Cir. 2002)).  Thus, Officer Moe is entitled to qualified immunity to the extent that he committed a constitutional violation when he entered Schreiber's home.

2.    False Arrest

By the same token, Officer Moe is also entitled to qualified immunity to the extent that Schreiber's arrest was a constitutional violation.  As stated previously, based upon the undisputed facts in the record, Officer Moe had probable cause to arrest Schreiber, thus no constitutional violation occurred.  But, even assuming that a violation occurred, it would not be apparent to a reasonable police officer that arresting a verbally abusive, and by his own admission, "out of control" person who was confronting the police officer and who had thrown a chair through a sliding glass door would be unlawful.  Qualified immunity protects all "but the plainly incompetent or those who knowingly violate the law."  *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  Officer Moe's arrest of Schreiber was neither plainly incompetent nor a knowing violation of the law, therefore, he is entitled to qualified immunity on Schreiber's false arrest claim.

29

3.      Excessive Force

Schreiber's excessive force claim requires a more in-depth analysis.  Excessive force

claims are evaluated under the reasonableness standard of the Fourth Amendment.  *Sigley*

*v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006) (quoting *Graham*, 490 U.S. at

395).  The reasonableness of the amount of force used turns on the facts and circumstances

of each case.  *Dunigan v. Noble*, 390 F.3d 486, 493 (6th Cir. 2004).  The following factors

have been used to evaluate whether a police officer's actions are reasonable: (1) the severity

of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the

officers or others, (3) whether the suspect is actively resisting arrest or attempting to evade

arrest by flight.  *Graham*, 490 U.S. at 396; *Sigley*, 437 F.3d at 534.

> The "reasonableness" of a particular use of force must be judged from the
> perspective of a reasonable officer on the scene, rather than with the 20/20
> vision of hindsight . . . Not every push or shove, even if it may later seem
> unnecessary in the peace of a judge's chamber, violates the Fourth
> Amendment.  The calculus of reasonableness must embody allowance for the
> fact that police officers are often forced to make split-second judgments-in
> circumstances that are tense, uncertain, and rapidly evolving-about the amount
> of force that is necessary in a particular situation.

*Dunigan*, 390 F.3d at 493 (quoting *Graham*, 490 U.S. at 396-97).   In assessing, the

reasonableness of an officer's actions, the Court analyzes the events in segments.  *Phelps v.*

*Coy*, 286 F.3d 295, 302 (6th Cir. 2002) (citing *Dickerson v. McClellan*, 101 F.3d 1151, 1161-

62 (6th Cir. 1996)).

With these principles in mind, the Court turns to an evaluation of the circumstances

of this case.  The Court will analyze Officer Moe's actions in two segments: (1) actions taken

30

in the home during the struggle to arrest Schreiber, and (2) actions taken post-arrest while Schreiber was in custody.  Taking the facts in the light most favorable to Schreiber, there is no doubt that during the struggle prior to the arrest, Officer Moe did not violate Schreiber's rights.  A question of fact, however, precludes the Court from finding that Officer Moe's actions while Schreiber was in custody did not amount to a constitutional violation.

During the time that Officer Moe was in Schreiber's home, Schreiber graphically expressed his opposition to and actively resisted Officer Moe's presence in the home. Although Officer Moe was on the scene, Schreiber continued to loudly argue with his daughter and also turned his anger toward Officer Moe.  While Officer Moe was in the home, Musto informed him that she believed Schreiber was a danger to his daughter.  Additionally, the application of force by Officer Moe was immediately preceded by Schreiber repeatedly slamming a chair into a sliding glass door until it shattered.  Schreiber himself acknowledges that he was "out of control" when he broke through the sliding glass door.  Schreiber Dep. at 42.  Given Schreiber's behavior during the entire incident, Officer Moe could reasonably believe that Schreiber was an immediate threat to him as well as others.[5]

Moreover, although Schreiber contends that no crime had taken place, his conviction for attempted assaulting/resisting/obstructing a police officer indicates otherwise.  Although

---

[5]Schreiber's argument that he did not pose an immediate threat to the safety of the officers and others because he did not attempt to use the chair as a weapon and did not possess any other weapon is completely misguided.  An "out of control" person who is so enraged that he endangers a roomful of people by shattering a sliding glass door is clearly a threat whether he has a weapon or not.

the crime is a misdemeanor, an attempt to assault, resist, or otherwise interfere with a police officer is a significant crime and may reasonably require that the police officer respond with force to prevent the criminal action. Furthermore, although in his brief Schreiber claims that he was not resisting arrest, his conviction undermines this assertion. The conviction forecloses any argument that Schreiber was passive during the altercation with Officer Moe. Indeed, Schreiber concedes that while he was on the ground he continued to antagonize Officer Moe by cursing and verbally abusing him. Schreiber Dep. at 48. Verbally baiting a police officer is not consistent with the behavior of a compliant person. Additionally, Schreiber has not pointed to any portion of the record indicating that while he was on the ground he was compliant and not actively resisting arrest. Officer Moe, however, indicated that it took several minutes of struggling to handcuff Schreiber. Finally, it also bears mentioning that Officer Moe was alone in his struggle with Schreiber because Officer Veldman was restraining Schreiber's family from interfering with the arrest.

In light of the rapidly developing circumstances, Officer Moe's use of physical force to subdue and handcuff Schreiber was reasonable. Schreiber's intense anger and aggressive behavior, as most clearly demonstrated by his shattering of the sliding glass door, required that Officer Moe make a split second decision as to the necessity and amount of physical force. The decision to tackle Schreiber and strike him repeatedly was reasonable under the circumstances. Based upon Schreiber's behavior, Officer Moe reasonably believed that Schreiber may fight back and that it may require more than a single strike to subdue him.

*Saucier*, 533 U.S. at 205 ("If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back . . . the officer would be justified in using more force than in fact was needed."). Additional force was also justified because Officer Moe did not have any assistance from his back-up police officer, who was ensuring that no one else interfered with the arrest. The fact that Officer Moe used multiple blows to Schreiber's face and body does not require a different result. As the Supreme Court has noted, "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham*, 490 U.S. at 396-97. Officer Moe's actions in subduing Schreiber and placing him under arrest did not cross that "hazy border between excessive and acceptable force." *Saucier*, 533 U.S. at 206 (quoting *Priester v. Rivera Beach*, 208 F.3d 919, 926-27 (11th Cir. 2000)). Accordingly, the undisputed facts do not reveal that Officer Moe violated Schreiber's constitutional rights. Therefore, Officer Moe is entitled to qualified immunity for this portion of Schreiber's excessive force claim.

The second segment relevant to Schreiber's excessive force claim are the events occurring after he was handcuffed and in custody. After subduing Schreiber, Officer Moe handcuffed him and led him out of the home. Schreiber contends that when he was placed in the police car, Officer Moe kicked him in the ribs five times. Although Officer Moe denies that he kicked Schreiber, at this stage of the proceeding, the Court must accept Schreiber's version of the events. Repeatedly kicking a suspect after handcuffing and subduing him is not a reasonable application of physical force. *Champion v. Outlook*

33

*Nashville, Inc.*, 380 F.3d 893, 902-03 (6th Cir. 2004) (holding that laying on top of and pepper spraying a suspect wearing handcuffs and a hobbling device was not objectively reasonable); *Phelps*, 286 F.3d at 301 (holding that tackling a handcuffed suspect during booking, hitting him twice in the face, then slamming his head into the floor was excessive force); *Cox v. Treadway*, 75 F.3d 230, 234 (6th Cir. 1996) ("This court has held that beating and kicking restrained suspects who are in the control of the police is plainly excessive force.") (quotation marks omitted) (citing *Lewis v. Downs*, 774 F.2d 711 (6th Cir. 1985); *McDowell v. Rogers*, 863 F.2d 1302 (6th Cir. 1988)). In contrast to the struggle within the home prior to Schreiber's arrest, at the time he was allegedly kicked, Schreiber was within the control of the police, was handcuffed, and was in a police cruiser. Consequently, repeatedly kicking Schreiber was an unnecessary and unreasonable application of force. Officer Moe contends that kicking Schreiber was reasonable because Schreiber was spitting blood at him and had said that he had AIDS. Officer Moe asserts that, under the circumstances, pushing Schreiber with his foot was reasonable. Officer Moe's characterization understates the level of force allegedly applied.[6] Schreiber's testimony indicates that Officer Moe's actions were more severe than simply pushing Schreiber with his foot. Schreiber has alleged that Officer Moe kicked him in the left side five times. There is no indication that these gratuitous blows were applied to assist Schreiber into the car or to

---

[6]Moreover, based on Schreiber's testimony, it appears that he did not tell Officer Moe that he had AIDS until after Officer Moe kicked him. Schreiber Dep. at 50-52.

34

allow Officer Moe to keep his distance from Schreiber.  Moreover, "where the legal question of qualified immunity turns upon which version of the facts one accepts, the jury, not the judge, must determine liability." *Pouillon v. City of Owosso*, 206 F.3d 711, 715 (6th Cir. 2000).  Accordingly, the Court cannot conclude as a matter of law that Officer Moe did not violate Schreiber's constitutional rights by repeatedly kicking him while he was in custody. Furthermore, a reasonable police officer would have known that continuing to beat a suspect after he is handcuffed and in police custody is unlawful and, therefore, a violation of a clearly established constitutional right.  *Champion*, 380 F.3d at 903, *Phelps*, 286 F.3d at 301-02. Therefore, this narrow portion of Schreiber's excessive force claim survives dismissal.

E.     Municipality Liability

Schreiber has also asserted a § 1983 claim against the City.  In order to prevail under § 1983 against a municipality, Schreiber must show that the alleged violation of a federal right occurred because of a municipal policy or custom.  *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)).  The Sixth Circuit has identified four avenues a plaintiff may take to prove the existence of an illegal policy or custom: (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations.  *Id*.  Schreiber appears to rely on the third and fourth avenues.  In his complaint he has alleged that the City had a policy of inadequate

training and had a policy to "improperly investigate citizen complaints of police misconduct." Pl.'s Compl. ¶ 13.

In order to prevail under a theory of inadequate police training, Schreiber must demonstrate that "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 380-89 (1989). This Court and others have applied the "deliberate indifference" standard from *City of Canton* to situations in which a plaintiff alleges that a municipality has a policy of inadequate investigation and response to citizen complaints. *See Clark v. Pena*, 2000 U.S. Dist. LEXIS 6660, *15 (W.D. Mich. April 28, 2000) (Enslen, C.J.) (collecting cases). The Sixth Circuit has further outlined a plaintiff's burden when relying on an alleged policy of improper investigation and toleration of federal rights violations. *Thomas*, 398 F.3d at 429. The plaintiff must show: (1) the existence of a clear and persistent pattern of [illegal activity]; (2) notice or constructive notice on the part of the [defendant]; (3) the [defendant's] tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and (4) that the [defendant's] custom was the "moving force" or causal link in the constitutional deprivation. *Id.* (quoting *Doe v. Claiborne County*, 103 F.3d 495, 508 (6th Cir. 1996)).

The City contends that summary judgment is appropriate because Schreiber has failed to offer any admissible evidence that would create a genuine issue of material fact for trial on the municipal liability claims. The City also offered a listing of the mandatory training

36

sessions Officer Moe attended between 1990 and 2005 and the affidavit of Lieutenant Daniel Lind, the police department training bureau commander, detailing the mandatory training and monitoring conducted by the police department. *See* Exhibits K, L, Def.'s Br. Summ. J. The City also provided a record of each complaint filed with the internal officers unit against Officer Moe since 1990 and the internal affairs report involving the incident with Schreiber. Exhibit M, N.

In his response, Schreiber failed to address in any way the City's motion for summary judgment on his claims against the City. Schreiber has not offered any evidence to support his allegations against the City. On summary judgment, the moving party bears the burden of showing that there is an absence of evidence to support the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325. Upon making this showing, the burden shifts to the non-movant, in this case, Schreiber, to come forward with evidence raising a triable issue of fact. *Id.* at 323. It is not sufficient to rest on the allegations in the pleadings, rather, Schreiber must "come forth with requisite proof to support his legal claim, particularly where he has had the opportunity to conduct discovery." *Cardamone*, 241 F.3d at 524; *Daniel*, 375 F.3d at 381. Schreiber has made no attempt to satisfy his burden on summary judgment. Accordingly, the City's motion for summary judgment is granted.

IV.

For the reasons set forth above, the Court grants in part and denies in part Defendants'

motion for summary judgment on Schreiber's federal claims.   An order will be entered

consistent with this opinion.


Date:   ___August 10, 2006___          /s/ Robert Holmes Bell_____
                                       ROBERT HOLMES BELL
                                       CHIEF UNITED STATES DISTRICT JUDGE

38